UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OHIO CASUALTY INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JAMES IN WUNG PARK, et al.,<br><br>　　　　Defendants. | Case No.  15-cv-02716-DMR<br><br>**REQUEST FOR REASSIGNMENT AND REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 14 |

In this breach of contract action, Plaintiff Ohio Casualty Insurance Company ("Ohio Casualty") moves the court pursuant to Federal Rule of Civil Procedure 55(b)(2) for entry of default judgment against Defendants James In Wung Park and Kathy In Wung Park.  [Docket No. 14.]  Plaintiff alleges that it paid a claim on behalf of Defendants pursuant to an indemnity agreement and Defendants have not compensated Plaintiff.  Plaintiff now brings this motion for default judgment to recover the amounts it paid on behalf of Defendants.  Defendants have not yet appeared and therefore have not filed a declination or consent to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  The court requests that this case be reassigned to a District Judge, and issues this Report and Recommendation, with a recommendation that the motion be GRANTED.

**I.  BACKGROUND**

Plaintiff is an insurance company incorporated in New Hampshire, which is also its principal place of business.  (Compl. ¶ 3.)  Defendants are individuals who reside in Dublin, California.  *Id*. at ¶¶ 4, 5.  Plaintiff alleges that on February 24, 2014, Defendants signed the "Liberty Quickaccess Indemnity Agreement" ("Indemnity Agreement") as "an inducement and partial consideration for Ohio Casualty issuing surety bonds" on behalf of third-party Hauzen, Inc.

("Hauzen"). *Id*. at ¶ 8. James In Wung Park executed the Indemnity Agreement on behalf of Hauzen as indemnitor. *Id*., Ex. 1 (Indemnity Agreement). He also signed the Indemnity Agreement as an individual indemnitor, as did his wife, Kathy In Wung Park. (Indemnity Agreement.) The Indemnity Agreement assures that Defendants, as indemnitors, will "exonerate, indemnify and hold harmless" the surety, Ohio Casualty, "from and against all and all Loss." Indemnity Agreement § 3.

At some point, Hauzen entered into a short form standard subcontract with third-party D.L. Falk Construction ("Falk"). Compl. ¶ 10. After Defendants executed the Indemnity Agreement, Plaintiff issued the surety bonds on behalf of Hauzen for performance of the subcontract. Compl. ¶ 11. Falk subsequently defaulted and terminated Hauzen under the subcontract. Compl. ¶ 12. Falk then filed a claim against Hauzen under the Subcontract Performance Bond. *Id*. Plaintiff settled and paid Falk's claim in the amount of $136,000. Compl. ¶ 13, Ex. 8.

Under the Indemnity Agreement, "losses" include claims, liabilities, suits, and "damages of any type." Compl. ¶ 9, Indemnity Agreement § 1. Plaintiff alleges that Defendants have failed to indemnify Plaintiff as set forth in the Indemnity Agreement. Compl. ¶ 9. On June 16, 2015, Plaintiff filed a complaint with this court alleging four causes of action: 1) breach of the indemnity agreement; 2) specific performance; 3) injunctive relief; and 4) *quia timet*, which is an action for equitable relief against an anticipated injury. *See Escrow Agents' Fid. Corp. v. Superior Court*, 4 Cal. App. 4th 491, 494 (1992) (defining *quia timet*).

Plaintiff served Defendants with the summons and complaint on July 22, 2015. [Docket Nos. 8, 9 (Proofs of Service).] Defendants did not file a responsive pleading or otherwise appear. On August 26, 2015, the clerk entered Defendants' default. [Docket No. 11.] Plaintiff filed the present motion for default judgment on October 12, 2015. [Docket No. 14.] The court subsequently ordered Plaintiff to submit supplemental briefing in support of its motion, which Plaintiff timely filed. [Docket Nos. 16, 18.] The court held a hearing on December 10, 2015. Defendants did not appear.

**II. LEGAL STANDARDS**

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."); *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 999.

Before assessing the merits of a default judgment, a court must ensure the adequacy of service on the defendant, as well as confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**III. ANALYSIS**

**A. Service of Process**

Plaintiff served Defendant Kathy In Wung Park personally at 3115 Finnian Way, #229, in Dublin, California on July 22, 2015. [Docket No. 8 (1st Proof of Service.).] This address is where Defendants presently reside. (Durante Decl., Oct. 29, 2015 ("Durante Decl. II") ¶ 9.) Plaintiff served Defendant James In Wung Park by leaving a copy of the summons, complaint and related

3

1    papers with Ms. Park at the same address.  [Docket No. 9 (2nd Proof of Service.).]  Plaintiff also

2    mailed a copy of the summons, complaint, and related papers to the same address on July 23, 2015

3    after making multiple attempts to personally serve Mr. Park.  *Id.*

4          Under the Federal Rules of Civil Procedure, an individual may be served by either

5    complying with state law for serving an individual, personally serving the defendant, or by leaving

6    a copy of service at the individual's "dwelling or usual place of abode with someone of suitable

7    age and discretion who resides there."  Fed. R. Civ. P. 4(e)(1), 4(e)(2)(A-B).

8          As to  Ms. Park, Plaintiff personally served her on July 22, 2015 and therefore service was

9    proper under Federal Rule of Civil Procedure 4(e)(2)(A).  The court also finds that Plaintiff

10   properly served Mr. Park by leaving a copy of the summons, complaint, and related papers with

11   his wife, Ms. Park, at their home on July 22, 2015.  Therefore, Plaintiff properly effected service

12   in this case.

### B.  Subject Matter Jurisdiction

14   Federal courts have subject matter jurisdiction over a case when the parties are citizens of

15   different states and when the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  A

16   person is a citizen of the state in which it is domiciled.  *Kantor v. Wellesley Galleries, Ltd*., 704 F.

17   2d 1088, 1090 (9th Cir. 1983).  In this case, Defendants are domiciled in Dublin, California.

18   Compl. ¶¶ 4, 5.  Plaintiff is incorporated and has its principal place of business in New Hampshire,

19   (Compl. ¶ 3), and the amount in controversy exceeds $75,000.  Compl. ¶ 14.  Therefore, since the

20   parties are diverse and the amount in controversy exceeds the jurisdictional minimum, this court

21   has subject matter jurisdiction over this case.

### C.  Personal Jurisdiction

23   Traditional bases for personal jurisdiction include a defendant's consent to jurisdiction,

24   personal service of a defendant within the forum state, or a defendant's citizenship or domicile

25   within the forum state.  *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 943 (N.D. Cal.

26   2014) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011)).  If the traditional

27   bases for jurisdiction are absent, a defendant must have "'certain minimum contacts'" with the

28   forum "'such that the maintenance of the suit does not offend traditional notions of fair play and

4

1  substantial justice.'" *Mulato*, 76 F. Supp. 3d at 943 (quoting *Int'l Shoe Co. v. State of Wash.*, 326
2  U.S. 310, 316 (1945)).
3        Here, both Defendants are residents of Dublin, California. (Durante Decl. II ¶ 9.)
4  Additionally, both Defendants were served within the state. Therefore, Defendants are subject to
5  personal jurisdiction.

**D. *Eitel* Factors**

Turning to the first *Eitel* factor, Plaintiff will suffer prejudice if the court does not enter a default judgment against Defendants because Plaintiff otherwise has no means to recover the loss it suffered. *Pepsico, Inc.*, 238 F. Supp. 2d at 1177.

Plaintiff also meets the second and third *Eitel* factors. Plaintiff's complaint pleads the elements for breach of an indemnity agreement. California law applies to federal diversity cases arising in California. *Allstate Ins. Co. v. Smith,* 929 F.2d 447, 449 (9th Cir. 1991). To establish the breach of an indemnity agreement under California law, Plaintiff must show 1) the existence of an indemnity agreement, 2) performance under the indemnity agreement, 3) breach of the indemnity agreement, and 4) resulting damage to plaintiff as a result of defendant's breach. *Hartford Fire Ins. Co. v. NBC Gen. Contractors Corp.*, No. C 09-5363 SBA, 2014 WL 4744633, at *4 (N.D. Cal. Sept. 23, 2014) (citing *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal.2d 822, 830 (1968)). Plaintiff alleges that it entered into the Indemnity Agreement with Mr. and Ms. Park on February 24, 2014 in favor of Ohio Casualty. Compl. ¶ 8. The Indemnity Agreement identifies Defendants as individual indemnitors in consideration for Ohio Casualty's issuing surety bonds on behalf of Hauzen. Compl. ¶¶ 8, 11. Plaintiff alleges that it paid a claim on behalf of Hauzen and that the Indemnity Agreement entitles Plaintiff to reimbursement for the claim, but that Defendants have failed to indemnify Plaintiff for the loss. Compl. ¶¶ 13, 16, 17. Plaintiff has submitted a legally sufficient complaint for breach of contract.[1]

---

[1] Plaintiff's remaining claims are for specific performance, injunctive relief, and *quia timet*. Specific performance and injunctive relief are forms of relief, not independent causes of action. *Harara v. ConocoPhillips Co.*, 377 F. Supp. 2d 779, 796 n.20 (N.D. Cal. 2005) ("[s]pecific performance is a form of contractual relief, not an independent claim."); *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1182 (E.D. Cal. 2010) ("[i]njunctive relief is a remedy and not, in itself, a cause of action" (citation omitted)). Similarly, "[q]uia timet (literal translation, 'because

1  The fourth factor also turns in favor of the Plaintiff.  "When the money at stake in the
2  litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core*
3  *Concrete Const., Inc.*, No. 11-2532 LB, 2012 WL 380304 at *4 (N.D. Cal. Jan. 17, 2012) (citing
4  *Eitel*, 782 F. 2d at 1472).  However, "when the sum of money at stake is tailored to the specific
5  misconduct of the defendant, default judgment may be appropriate." *Id*. (citations omitted).  Here,
6  Plaintiff seeks reimbursement plus interest for the $136,000 it paid to Falk Construction on behalf
7  of Defendants.  (Pl.'s Mot. at 9; *see also* Durante Decl. II, ¶10.)  Additionally, Plaintiff asks for
8  contractual attorneys' fees and costs associated with pre-litigation collection efforts as well as
9  those in connection with this litigation.  (Pl.'s Mot. at 9.)  Plaintiff seeks a total of $157,205.58.
10 *Id*.  The court finds this amount neither unwarranted nor unreasonable.

11 Moving to the fifth factor, Defendants have not appeared in this action, nor have they
12 contested any of Plaintiff's material facts.  *Shanghai Automation Instrument Co*., 194 F. Supp. 2d
13 at 1005.  Finally, nothing in the record demonstrates that Defendants defaulted due to excusable
14 neglect.  To the contrary, counsel for Defendants has been in contact with Plaintiff's counsel and
15 is aware that Plaintiff moved for default judgment.  (Curran Decl., Oct. 29, 2015 ("Curran Decl.
16 II"), ¶ 8-12, Exs. 9-12.)  Thus, it appears that Defendants have mindfully decided not to participate
17 in the litigation.  On balance, the court finds that the first six *Eitel* factors outweigh the Federal
18 Rules of Civil Procedure's strong preference for a decision on the merits.  The court therefore
19 recommends entry of default judgment.

20 **E.  Damages**

21 To recover damages after securing a default judgment, a plaintiff must prove the relief it
22 seeks through testimony or written affidavit.  *Bd. of Trs. of the Boilermaker Vacation Trust v.*
23 *Skelly, Inc*., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see PepsiCo Inc*., 238 F. Supp. 2d at
24 1175 (citing *Televideo Sys., Inc*., 826 F.2d at 917-18).  Here, Plaintiff provides proof of its

---

he fears'), is an action for equitable relief against an anticipated injury." *Escrow Agents' Fidelity Corp*., 4 Cal. App. 4th at 494; *see also Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990, 1002 (N.D. Cal. 2010) ("Bills quia timet are most often filed in surety cases, where a surety, after the debt for which he is liable has become due, seeks to compel the principal to pay the debt." (citing *Escrow Agents' Fidelity Corp*., 4 Cal. App. 4th at 494)).  Plaintiff moved for default judgment only as to the breach of contract claim.

6

damages through the Indemnity Agreement, a copy of the check for payment of the claim, attorney invoices, and proof of costs. (Durante Decl., Oct. 12, 2015 ("Durante Decl. I") ¶ 8-12; Ex. 8; Durante Decl. II, Exs. 15–21.) *See Great Am. Ins. Co. v. Mivco Packing Co.*, LLC, No. C-08-05454 RMW, 2009 WL 942390, at *3 (N.D. Cal. April 6, 2009) (copies of checks and declarations are sufficient to prove damages for breach of an indemnity agreement).

### 1. Contract Damages

The Indemnity Agreement provides that the Parks are the indemnitors to the agreement and as such, they promise "to exonerate, indemnify and hold harmless Surety [Ohio Casualty] from and against all and all loss." Indemnity Agreement §§ 1, 3. Loss is defined as "claims, losses, liability, damages of any type (including punitive), costs, fees, expenses, suits, orders, judgments, or adjudications whatsoever and interest thereupon from the date upon which the Surety incurs a Loss." *Id*. at § 1. The Indemnity Agreement does not include a stipulated rate of interest. Under California law, if no interest rate is specified in the contract, an interest rate of 10% per annum applies. Cal. Civ. Code § 3289(b); *Fitz Fresh, Inc. v. Mondragon*, No. C-08-02407 RMW, 2008 WL 4811457, at *2 (N.D. Cal. Nov. 5, 2008) (stating "[w]here a contract does not stipulate an interest rate, California law imposes a 10% 'per annum' prejudgment interest rate.").

Here, third-party Falk made a claim under Hauzen's Subcontract Performance Bond, and as the surety, Plaintiff settled and paid Falk's claim for $136,000. (Durante Decl. I, ¶ 8-12, Ex. 8.) Plaintiff seeks reimbursement pursuant to the Indemnity Agreement in the sum of $136,000, plus $8,458.08 in interest. Plaintiff calculated the interest at the rate of 10% per annum from April 27, 2015 through December 10, 2015, the date of the hearing on Plaintiff's motion. (Supplemental Br. in Supp. of Default J. at 4, Ex. 15.) This court recommends that Plaintiff be awarded $136,000 plus $8,458.08 in interest as compensation for the paid claim, for a total of $144,458.08.

### 2. Attorneys' Fees and Costs

The Indemnity Agreement defines "Loss" to include "[c]laims, losses, liability, damages of any type (including punitive), costs, fees, expenses, suits, orders, judgments, or adjudications whatsoever." Indemnity Agreement § 1. Under California Civil Code section 2778, "unless a contrary intention appears . . . [a]n indemnity against claims, or demands, or liability, expressly, or

7

in other equivalent terms, embraces the cost of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion." Cal. Civ. Code § 2778(3). Under Ninth Circuit law, "costs, expenses and attorney's fees paid in defense of the claim are included within the amount that must be indemnified," as are "costs and attorney's fees for prosecuting an indemnification claim." *DeWitt v. W. Pac. R.R. Co.*, 719 F.2d 1448, 1452-53 (9th Cir. 1983) (discussing section 2778(3) and acknowledging split in California authority); *see also Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F. 2d 688, 696 n.4 (9th Cir. 1992) (explaining that "*DeWitt*'s interpretation of California law [regarding recovery of attorneys' fees for an action against an indemnitor] is 'binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect.'" (citation omitted)). As of September 30, 2015, Plaintiff claims it has accrued $10,019.40 in attorneys' fees. The court must decide whether these fees are reasonable.

The court determines reasonable attorneys' fees according to the lodestar analysis, which multiplies the number of hours reasonably expended on the matter by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). The reasonable hourly rate depends on "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). When assessing the rate, the court also may consider the novelty and complexity of the issues; the special skill and experience of counsel; the quality of representation; and the results obtained. *See Cabrales v. Cty. of L.A.*, 864 F.2d 1454, 1464 (9th Cir. 1988). Although the court presumes that the lodestar represents a reasonable fee, *Jordan*, 815 F.2d at 1262, the court may adjust the award if other factors make it unreasonable. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Between April and September 30, 2015, James D. Curran, partner at Wolkin Curran, LLP, worked 36.00 hours on this matter at the rate of $260 per hour. (Durante Decl. II, Exs. 16-21.) Curran states that he has been practicing law for nearly 30 years. (Curran Decl. II ¶ 23.) Steve Wong, a paralegal, worked 5.50 hours on this matter at a rate of $120 per hour. *Id.*, Exs. 16, 17. The court finds that the rates and number of hours worked are reasonable. *See Int'l Fid. Ins. Co. v. Draeger Const., Inc.*, No. 10-CV-04398-LHK, 2012 WL 424994, at *6 (N.D. Cal. Feb. 8, 2012)

1 (finding that $285 per hour for a partner and $140 for a paralegal is appropriate in the San Francisco Bay Area for investigating claims, filing the complaint, and obtaining injunctive relief in a case involving surety bonds.).

Additionally, Plaintiff incurred $637.60 in costs for mailing, telephoning and copying charges, and $2,054.50 in costs for filing the complaint and service of process.  (Durante Decl. II, ¶ 17, Exs. 16-21, 19, 20.)  Plaintiff is requesting $10,019.40 in attorneys' fees and $2,692.10 in costs for a total of $12,711.50.  These fees and costs are recoverable under the Indemnity Agreement and should be granted.  The court recommends that Plaintiff recover $12,711.50 in attorneys' fees and costs pursuant to the Indemnity Agreement.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that Plaintiff has demonstrated its entitlement to default judgment.  Accordingly, the court recommends that Plaintiff's motion for default judgment be granted and that Plaintiff be awarded $157,169.58 in damages, attorneys' fees and costs.  The Clerk is directed to reassign this case to a District Judge.  Any party may file objections to this report and recommendation with the District Judge within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Cal. Civ. L.R. 72-2.

**IT IS SO ORDERED**.

Dated:  December 21, 2015



DONNA M. RYU
United States Magistrate Judge